Jewell **MAXON, et al., Respondents,**

v.

**FARMERS INSURANCE COMPANY, INC., Appellant.**

**No. WD 42458.**

Missouri Court of Appeals, Western District.

April 3, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application to Transfer Denied July 31, 1990.

Lance W. Lefevre, Kansas City, for appellant.

Patrick B. Starke, Blue Springs, for respondents.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

The Maxons, policy holders, brought this declaratory action against their insurer, Farmers Insurance Company, to stack their two policies where their damages exceeded the insurance provided by a tortfeasor.

Summary judgment was granted in favor of the Maxons.

Jewell Maxon was a passenger in a truck driven by her husband. A negligent driver collided with their truck inflicting extensive injuries to Jewell which caused her four surgeries with at least one future operation contemplated. The tortfeasor had insurance in the amount of $100,000, the policy limits of which were tendered by State Farm Insurance Company to the Maxons. The potential damages far exceeded that amount. The Maxons had two $100,000 policies with the appellant which, as pertinent here, provided:

We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

\* \* \* \* \* \*

3. Uninsured motor vehicle means a motor vehicle which is:

a. Not insured by a bodily injury liability bond or policy at the time of the accident.

b. Insured by a bodily injury liability bond or *policy* at the time of the accident which provides *coverage in amounts less than the limits of Uninsured Motorist Coverage* shown in the Declarations. (Emphasis added.)

\* \* \* \* \* \*

Two or More Cars Insured

With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

The Maxon's motion contended the emphasized portion of the Farmers policies made the tortfeasor's auto "uninsured," since it was insured for less than the "stacked" amount of their insurance policies. In essence, they maintain, the policy language itself allows an "underinsured" vehicle to be considered an "uninsured" vehicle. They ask for an interpretation disregarding the "two or more cars," or anti-stacking clause in view of the language of section 3b, which treats uninsured and underinsured as being the same. Farmers denied the policies could be stacked for determining the total coverage available, and denied the policies should be interpreted as treating the "underinsured" tortfeasor's car as "uninsured." It alleges there is no public policy nor contract language to support the trial judge's ruling.

The court has concluded there is no public policy to treat underinsured coverage as being congruent with the required uninsured coverage. *Geneser v. State Farm,* 787 S.W.2d 288 (Mo.App.1989). Therefore, this case turns on whether the contract written by Farmers, and strictly construed against it, *Lutsky v. Blue Cross Hosp. Service, Inc.,* 695 S.W.2d 870, 874 (Mo. 1985); *Bellamy v. Pacific Mutual Life Ins. Co.,* 651 S.W.2d 490 (Mo. banc 1983), is ambiguous, or can be interpreted as treating underinsured coverage the same as uninsured coverage.

If a contract promises something in one point and takes it away in another, there is a resultant ambiguity, *Behr v. Blue Cross Hosp. Service, Inc.,* 715 S.W.2d 251, 256 (Mo. banc 1986), and any ambiguity or doubt as to meaning is construed against the insurance company. *Id.* 255–56; *Mauer v. State Employees' Retirement Sys.,* 762 S.W.2d 517, 520 (Mo.App. 1988).

There is no new public policy question involved in the case at bar—here there is simply an insurance contract which treats uninsured and underinsured as being one in the same, coupled with existing case law allowing the stacking of uninsured policies. Had Farmers not chosen in its policy to define uninsured as including underinsured, this case would never have arisen. As opposed to *Geneser, supra,* where the issues only involved pure underinsured provisions, the Farmers language here lumps the proverbial apples and oranges and calls

this class apples. In *Geneser*, this court felt the anti-stacking provision as to underinsured coverage should prevail, was clear as written, *Eagle Star Co. v. Family Fun, Inc.*, 767 S.W.2d 623, 624 (Mo.App.1989), and would not be overborne by public policy. *Adams v. Julius*, 719 S.W.2d 94, 101 (Mo.App.1986).

At this point some background on the progression of the case law enunciating a public policy allowing the stacking of multiple uninsured provisions is in order:

1) In order to give motorists who purchased insurance coverage for those who didn't, § 379.203, RSMo.1986 was enacted. Every policy had to contain (and the motorist had to pay for) uninsured motorist coverage. *Bergtholdt v. Farmers Insurance Co., Inc.*, 691 S.W.2d 357, 359 (Mo.App. 1985).

2) In *Cameron Mutual Insurance Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976), the injured motorist had multiple policies, all with the required uninsurance clause, but the contract language prohibited "stacking." As a matter of public policy the contract language fell because to do so "would deny the named insured the benefit of some of the coverage which was required and which had to be paid for." *Hines v. Government Employees Insurance Co.*, 656 S.W.2d 262, 265 (Mo. banc 1983).

3) In *Bergtholdt, supra,* the plaintiff owners suffered $100,000 in damages. They had two 25/50 policies with the defendant. The tortfeasor had the required minimum of 25/50 coverage under § 303.190.2(2). *Id.* at 359. The policy, however, defined "uninsured motor vehicle" in such a way that it expanded "the concept of uninsured motorist to include an underinsured motorist." *Id.* at 359–60. So, even though the tortfeasor was not "uninsured" under the statute, he was denominated as such by the policy. The anti-stacking provision was overridden and the policies were stacked to $100,000, then reduced by the $25,000 from the tortfeasor's company. *Id.* at 360.

4) Another variation is found in *Cook v. Pedigo*, 714 S.W.2d 949 (Mo.App.1986), where the tortfeasor had insurance, but "in an amount less than the statutory minimum." *Id.* at 950. The eastern district deemed the tortfeasor was "underinsured" and "should be considered uninsured" for the purposes of the statute. *Id.* at 950.

5) In *Geneser, supra,* where there was separate *underinsured* coverage as opposed to the required *uninsured* provisions, anti-stacking language was allowed to prevail on *underinsured* insurance, there being no statute or public policy provision to the contrary.

▮ Out of all of the case law it may be said parties are free to contract, but the preparer of the insurance contract may not collect premiums for mandated uninsured coverage and then by anti-stacking provisions deny multiple coverage. The latest twist in all these factual variations comes in this case where the policy language treats a classic *underinsured* tortfeasor the same as an *uninsured* tortfeasor, but later in the policy there is language prohibiting stacking when the insured had two or more cars insured with the company.

The facts here are similar to those in *Krombach v. The Mayflower Insurance Company, Ltd.*, 785 S.W.2d 728 (Mo.App. 1990), which was decided by the eastern district. Krombach was injured and a passenger killed by a drunk driver who had auto liability coverage of $100,000 and $300,000. Mayflower insured Krombach for $300,000 per accident and $50,000 "uninsured (and underinsured) motorist coverage." *Id.* at page 730. The Mayflower policy in the section concerning uninsured coverage specifically stated "uninsured motor vehicle" also includes an "underinsured motor vehicle." *Id.* at page 731. Krombach and the passenger's parents filed against Mayflower pursuant to the underinsured provision claiming coverage and that the tortfeasor's insurance was insufficient to cover their damages. In holding against Mayflower the court held lay persons, such as the Krombach's, "would reasonably expect to receive coverage for both uninsured and underinsured motorists," *Id.* at 734, and that their policy would provide compensation up to the lim-

its of coverage, "where the tortfeasor's insurance is insufficient to cover his loss." *Id.* at 734.

■ Subject to later proof as to damages, this court concludes the policy here to be construed to deem the tortfeasor's car underinsured, that is a vehicle insured by a liability policy less than the injured person's damages, *Geneser, supra,* at page 289; *Krombach, supra,* at page 732, and, according to the policy on underinsured vehicle, is treated as an uninsured vehicle. The court further concludes in solving the conundrum created by the Farmer's policy language lumping uninsured and underinsured into an "uninsured" provision, that, despite the anti-stacking provisions of each policy, there is as to uninsured provisions a public policy allowing stacking as enunciated in *Cameron,* so the two here may be stacked.

Summary judgment in favor of the Maxon's was properly granted. The judgment declaring the two policies of Farmers may be stacked to allow the Maxons to make a claim on their uninsured-underinsured coverage to the extent the total of the policies ($200,000) exceeds the insurance proceeds of the tortfeasor ($100,000) is affirmed.