**Patrick CORRIGAN, and Sean Corrigan, Appellants,**

v.

**PROGRESSIVE INSURANCE COMPANY, Respondent.**

**No. ED 99380.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 10, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 22, 2013.

James E. Godfrey, Kathleen Teresa McCarthy, Evans & Dixon, LLC, St. Louis, MO, for Appellants.

Daniel E. Wilke, Kathy M. Wilke. St. Louis, MO, for Respondent.

KURT S. ODENWALD, Judge.

*Introduction*

Appellants Patrick Corrigan and Sean Corrigan ("Appellants") appeal from the trial court's judgment denying their motion for summary judgment and granting summary judgment in favor of Progressive Northwestern Insurance Company ("Progressive"). Appellants filed a petition for declaratory judgment seeking a declaration that they were entitled to $600,000 in underinsured motorist ("UIM") coverage. Progressive denied liability for $600,000, claiming that Appellants were not permitted to stack UIM coverage under the policy and were limited to $300,000 in UIM benefits. After competing motions for summary judgment were filed, the trial court entered summary judgment in favor of Progressive. Appellants now contend that the trial court erred in its summary

judgment rulings because the subject motorcycle insurance policy ("insurance policy") is ambiguous as to whether it allows for stacking of UIM coverage benefits, thereby requiring the trial court to construe the insurance policy in favor of the insured and allow the stacking of benefits.

Because the insurance policy unambiguously prohibits the stacking of UIM benefits, we find that there are no genuine issues of material fact and hold that Progressive is entitled to judgment as a matter of law. We affirm the trial court's entry of summary judgment in favor of Progressive and its denial of Appellants' motion for summary judgment.

### Factual and Procedural History

Viewed in the light most favorable to Appellants, the record contains the following undisputed facts. Christopher Corrigan ("Corrigan") had one motorcycle insurance policy with Progressive that insured both a 2007 Harley–Davidson motorcycle and a 2009 BMW motorcycle, each owned by Corrigan. Corrigan maintained UIM coverage on both motorcycles under the policy, paying separate UIM premiums for each motorcycle. The declarations page of the insurance policy lists a $300,000 combined single limit for each accident under the UIM coverage provisions for each motorcycle.

On October 1, 2011, Corrigan was killed in a motorcycle accident when he was struck by a vehicle driven by Jessica Griffin ("Griffin"). At the time of the accident, Corrigan was driving the 2007 Harley–Davidson motorcycle. Corrigan's sons, the Appellants in this matter, settled their claim against Griffin for $25,000, which constituted the liability limits of her policy.

After exhausting Griffin's liability coverage, Appellants made a claim to Progressive for a total of $600,000 in UIM coverage, seeking $300,000 under each of the two UIM policies. Appellants contended that Corrigan's policy allowed stacking of the two UIM coverages for the 2007 Harley–Davidson and the 2009 BMW.[1] Progressive claimed that Appellants were entitled to only the $300,000 combined single limit of the UIM coverage for the 2007 Harley–Davidson that Corrigan was operating at the time of the accident.

Appellants filed a petition for declaratory judgment in April 2012 seeking a declaration as to the rights and liabilities of the parties. Specifically, Appellants sought a declaration that UIM coverage was applicable in this case, the UIM coverage for the 2009 BMW was excess to that of the UIM coverage for the 2007 Harley–Davidson, and the combined single limit of $300,000 for both the 2007 Harley–Davidson and the 2009 BMW should be stacked to provide $600,000 of UIM coverage under the insurance policy.

Progressive filed an answer to Appellants' petition, followed by a motion for summary judgment arguing that the insurance policy clearly and unambiguously prohibits the stacking of UIM coverage. Appellants also filed a motion for summary judgment, arguing that the insurance policy is ambiguous as to whether the insured could stack UIM coverage for each covered vehicle. Because the insurance policy is ambiguous in this regard, Appellants contended the policy must be interpreted against the insurer to grant coverage rather than defeat it.

In November 2012, the trial court entered an Order and Judgment granting Progressive's motion for summary judg-

---

1. Although the exact amount of damages has not been stipulated, the parties do not dispute damages for purposes of this action.

ment. Appellants' motion for summary judgment was denied. This appeal follows.

## Point on Appeal

In their sole point on appeal, Appellants claim that the trial court erred in denying their motion for summary judgment and in granting Progressive's motion for summary judgment because the insurance policy issued to Corrigan is ambiguous as to whether the insured may stack UIM coverage benefits. Appellants argue the ambiguity should be resolved in favor of the insured and the UIM coverage should be stacked.

## Standard of Review

We review the entry of summary judgment *de novo*. *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009). We review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Beyerbach v. Girardeau Contractors, Inc.*, 868 S.W.2d 163, 165 (Mo.App. E.D.1994).

Interpretation of an insurance policy is a question of law that this Court determines *de novo*. *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009).

## Discussion

Appellants' sole point on appeal focuses on the ambiguity of the language used in Corrigan's insurance policy regarding the insured's ability to stack UIM coverage.

Although the trial court gave no reasons for granting summary judgment in favor of Progressive, this Court must presume that the trial court granted judgment for the reasons set forth in Progressive's motion for summary judgment. *See Stewart v. Liberty Mut. Fire Ins. Co.*, 349 S.W.3d 381, 385 (Mo.App. W.D.2011). In its motion for summary judgment, Progressive correctly argued that, unlike uninsured motorist coverage, UIM coverage is not mandated by Missouri law. Accordingly, the coverage and limits of UIM coverage included in an insurance policy are determined solely by the terms of the contract entered into between the insured and the insurer. Progressive claimed that the insurance policy between Corrigan and Progressive unambiguously prohibits the stacking of UIM coverage, thereby limiting Progressive's liability under the UIM provisions to $300,000. We agree.

In Missouri, stacking of insurance benefits allows an insured "to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie*, 307 S.W.3d at 135 (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo.App. E.D.1999)). Missouri law requires all automobile insurance polices issued in this state to include uninsured motorist ("UM") coverage. Section 379.203.[2] Flowing from this requirement, the Missouri Supreme Court has recognized that where multiple policies or multiple UM coverages are in place, insurers must allow stacking of UM coverage. *Ritchie*, 307 S.W.3d at 135. By contrast, Mis-

---

**2.** All statutory references are to RSMo. Cum. Supp. (2012).

souri law does not mandate UIM coverage. *Id.* As a result, there is no similar public policy requiring the stacking of UIM coverage; rather, the contract between the insurer and the insured determines the existence of UIM coverage and its ability to be stacked. *Id.* Insurers are free to include anti-stacking provisions in their policies, and if unambiguous in disallowing stacking, the anti-stacking provisions will be enforced. *Id.; Hall v. Allstate Ins. Co.,* 407 S.W.3d 603, 608 (Mo.App.E.D.2012). However, if the policy is ambiguous as to stacking, this Court will construe the policy in favor of the insured and allow stacking. *Ritchie,* 307 S.W.3d at 135.

▮▮▮ In construing an insurance policy, we apply the meaning that would be attached by an ordinary person of average understanding and resolve all ambiguities in favor of the insured. *Id.* "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (quoting *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007)). Policy provisions are not to be interpreted in isolation, but rather we must evaluate the policy as a whole. *Seeck,* 212 S.W.3d at 133. A contract is ambiguous if it promises something in one clause and takes it away in another. *Id.* However, where an insurance policy is unambiguous, absent a public policy to the contrary, we will enforce the policy as written. *Hall,* 407 S.W.3d at 607. "The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity." *Id.* Likewise, "we may not unreasonably distort the language of the policy or exercise inventive powers for the

purpose of creating an ambiguity when none exists." *Id.*

▮▮▮ To determine the rights and liabilities of the parties, we first look to the insurance contract itself. *Id.* at 608. Here, the declarations page at the outset of Corrigan's insurance policy states, "Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle." The 2007 Harley–Davidson and the 2009 BMW both include UIM coverage with a coverage limit of "$300,000 combined single limit each accident." The insurance policy then includes the following relevant terms:

**General Definitions** [3]

3. **"Covered motorcycle"** means:

a. any **motorcycle** shown on the **declarations page** for the coverages applicable to that motorcycle.

5. **"Motorcycle"** means any motorcycle, motorbike, motor scooter, or motorized trike that is designed for operation principally upon public roads and has at least two wheels, but not more than three wheels.

\* \* \*

**Part III(B)—Underinsured Motorist Coverage**

**Insuring Agreement**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury:**

1. sustained by that **insured person;**
2. caused by an accident; and

---

**3.** Terms are bolded as they appear in the insurance policy. No additional emphasis is

intended by this Court.

3.  arising out of the ownership, maintenance, or use of an **underinsured motor vehicle.**

\*    \*    \*

**Limits of Liability**

The limit of liability shown, or where applicable the reduced limit, will apply regardless of the number of:

1.  claims made;
2.  **covered motorcycles;**
3.  **insured persons;**
4.  lawsuits brought;
5.  vehicles involved in the accident; or
6.  premiums paid.

\*    \*    \*

If **your declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident, subject to all reductions applicable to the limit of liability set forth above. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple vehicle policies issued by **us** are in effect for **you, we** will pay no more than the highest limit of liability for this coverage available under any one policy.

\*    \*    \*

**Other Insurance**

If there is other applicable underinsured motorist coverage, **we** will only pay **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide with respect to a vehicle that is not a **covered motorcycle** will be excess over any other underinsured motorist coverage.

\*    \*    \*

▮▮▮  Considered in isolation, the declarations page and the UIM portion of the insurance policy unambiguously disallow stacking of UIM coverage. The declarations page for the entire policy plainly states that the limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle. Additionally, the UIM coverage for the 2007 Harley–Davidson provides for a $300,000 combined single limit for each accident, which is "the most [Progressive] will pay for the total of all damages resulting from any one accident. . . ." Furthermore, the Limits of Liability provision under the UIM coverage section specifies that the limit of liability shown, here, $300,000, applies regardless of the number of covered motorcycles and premiums paid. Finally, the UIM section notifies the insured that if multiple vehicle policies issued by Progressive are in effect for the insured, Progressive will pay no more than the highest limit of liability for this coverage available under any one policy.

Despite the unambiguous disallowance of stacking in the declarations and UIM portions of the insurance policy, this Court will not interpret policy provisions in isolation but rather must consider the policy as a whole. *See Seeck*, 212 S.W.3d at 133. To that end, Appellants ask this Court to find ambiguity through Progressive's inconsistent use of terminology throughout the policy.

▮▮▮  Appellants first argue that the insurance policy at issue is ambiguous because the UM coverage provision explicitly references a prohibition of "stacking" while the UIM section does not. The UM coverage section of Corrigan's policy

states, "Regardless of the number of premiums paid, coverage available under this Part III(A) may not be added, combined, or stacked together to determine the limits of liability available for any one accident with respect to **insured persons** other than **you** or a **relative**." Appellants claim that the use of the word "stacked" in the UM coverage section, combined with the lack of identical language in the UIM coverage section, creates an ambiguity such that the insured may reasonably conclude that stacking of UIM coverage is allowed.

The Western District recently addressed a similar argument in *Taylor v. State Farm Mut. Auto. Ins. Co.*, 368 S.W.3d 174, 179–80 (Mo.App. W.D.2012). In that case, the appellant argued that because the insurer did not use the same anti-stacking language in the "Liability Coverage" section and the UIM portion of the policy, the policy was ambiguous. *Id.* While the court agreed that the anti-stacking language in the liability section of the policy was stronger than in the UIM section, that fact alone did not render the policy ambiguous. *Id.* at 180. Rather, the Western District found that the UIM section was intentionally worded more broadly in order to preclude stacking of any policies issued by the insurer with each other or with the policies of another insurance company. *Id.* Furthermore, the appellant cited no authority to support her argument that the difference in language used in different parts of the insurance policy necessarily rendered the policy ambiguous. *Id.*

We find the discussion in *Taylor* instructive. While we agree that the use of the word "stacked" in the UM coverage section is stronger than the language used by Progressive in the UIM coverage provision, Appellants provide no authority to support their argument that the use of different wording alone renders a policy ambiguous. We are not persuaded that

the use of the word "stacked" in the UM coverage section of the policy, but not in the UIM coverage section of the policy creates an ambiguity. The Limits of Liability portion of the UIM coverage section very clearly and unambiguously states that the limit of liability shown will apply regardless of the number of covered motorcycles and premiums paid, and that if multiple vehicle policies issued by Progressive are in effect for the insured, Progressive will pay no more than the highest limit of liability for this coverage available under any one policy. Additionally, the declarations page plainly states that the policy limits for a vehicle may not be *combined* with the limits for the same coverage on another vehicle. We fail to see how this language could convey to the reader any meaning other than the limitation set forth therein. Whether using the word "combine" or "stack," the insurance policy clearly prohibits the insured from obtaining multiple UIM coverage benefits.

We also note that the ability to stack UM coverage is irrelevant to whether UIM coverage may be stacked. As discussed above, Missouri has announced no public policy with regard to stacking of UIM coverage as is the case with UM coverage. *Ritchie*, 307 S.W.3d at 135. We acknowledge that Missouri courts have found an ambiguity to exist as to the ability to stack coverage where the provisions for UM coverage and UIM coverage are lumped together in an insurance policy. *See Am. Econ. Ins. Co. v. Cornejo*, 866 S.W.2d 174, 177 (Mo.App. E.D.1993) (section of policy titled "Uninsured/Underinsured Motorist Coverage" effectively treated UIM coverage as UM coverage and therefore could be stacked). But we are not presented with that fact pattern, as here the two provisions in the Progressive policy are separate and distinct. Each coverage section includes its own insuring agreement, definitions, exclusions, limits of liability,

and other insurance provisions. The use of the word "stacked" in the UM coverage section does not render the policy ambiguous as to the stacking of UIM coverage.

■ Appellants next argue that Progressive's use of the term "vehicle" in the subject *motorcycle* insurance policy renders the policy ambiguous. Appellants claim that because "vehicle" is not a defined term and the policy at hand is specifically a motorcycle policy, the insured has no reason to believe a motorcycle is the same thing as a "vehicle." Therefore, when the insurance policy uses the term "vehicle" to restrict or limit coverage, Appellants submit that it is unclear to the reader whether the restriction also applies to motorcycles. To support their argument, Appellants rely upon the provision of the declarations page which states that "[t]he policy limits shown for a *vehicle* may not be combined with the limits for the same coverage on another *vehicle*" (emphasis added). Appellants suggest that the insured may reasonably understand the limitations to not apply to motorcycles since motorcycles are not defined as vehicles in the policy. Appellants also cite the following policy language to illustrate their argument:

**Part III(A)—Uninsured Motorist Coverage**

If multiple *motorcycle* polices issued by us are in effect for **you, we** will pay no more than the highest limit of liability for this coverage available under any one policy.

\* \* \*

**Other Insurance**

If there is other applicable uninsured motorist coverage, **we** will only pay **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we**

provide with respect to a *motorcycle* that is not a **covered motorcycle** will be excess over any other uninsured motorist coverage (emphasis added).

Appellants compare the language of the UM coverage section with that of the UIM coverage section, which provides:

**Part III(B)—Underinsured Motorist Coverage**

If multiple *vehicle* policies issued by **us** are in effect for **you, we** will pay no more than the highest limit of liability for this coverage available under any one policy.

\* \* \*

**Other Insurance**

If there is other applicable underinsured motorist coverage, **we** will only pay **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide with respect to a *vehicle* that is not a **covered motorcycle** will be excess over any other underinsured motorist coverage (emphasis added).

■ When an insurer chooses to use a term in an insurance policy but does not define it, the term "will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013) (quoting *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992)). "To determine the ordinary meaning of a term, courts consult standard English language dictionaries." *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 22 (Mo.App. E.D.2002).

Random House Webster's College Dictionary defines "vehicle" as "1. any means in or by which someone or something is carried or conveyed: *a motor vehicle.* 2. a conveyance moving on wheels, runners, or the like, as an automobile." RANDOM

HOUSE WEBSTER'S COLLEGE DICTIONARY 1423 (2nd ed.1997). Applying the definition of "vehicle" to the terms of the insurance policy at hand, it is reasonable to assume a lay person would understand that a motorcycle is encompassed within the definition of vehicle, such that the policy's restrictions and limits on liability with regards to vehicles also apply to motorcycles. Furthermore, Progressive's use of the term "vehicle" on the declarations page and in the "Other Insurance" portion of the UIM coverage section does not create uncertainty in the meaning of the policy. *See Ritchie,* 307 S.W.3d at 135. Rather, the use of the term "vehicle" in those sections appears to serve a deliberate purpose: to prohibit stacking of any policies held by the insured, not just the insured's motorcycle policies. *See Taylor,* 368 S.W.3d at 180 (UIM section was intentionally worded broadly in order to preclude stacking of any policies). Because the insurance policy's use of the term "vehicle" does not create duplicity, indistinctness, or uncertainty in the meaning of the policy, we hold the policy is not ambiguous. *See Ritchie,* 307 S.W.3d at 135.

Appellants have failed to present evidence creating a genuine issue of fact as to whether the insurance policy is ambiguous, and that as a result of such ambiguity, the policy should be construed in favor of the insured to allow stacking of the coverage under the UIM provision for each motorcycle. The trial court did not err when granting summary judgment in favor of Progressive. Point denied.

### Conclusion

Because the insurance policy unambiguously prohibits stacking of UIM coverage, we affirm the trial court's grant of summary judgment in favor of Progressive and its denial of Appellants' motion for summary judgment.

MARY K. HOFF, P.J., and ANGELA T. QUIGLESS J., concur.