

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| SHELLY CHANDLER, et al., | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | WD76365 |
| | ) | |
| ALLIED PROPERTY & CASUALTY | ) | Filed: June 30, 2014 |
| INSURANCE COMPANY, | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Platte County**
**The Honorable Owens Lee Hull, Jr., Judge**

**Before Division One: Alok Ahuja, P.J., and Thomas H. Newton**
**and Anthony Rex Gabbert, JJ.**

Shelly Chandler and Ted Huber (collectively "Chandler") are the parents of Alexander Huber, who was killed in an automobile accident while riding as a passenger in a vehicle driven by Steven Jimenez. Chandler obtained a judgment against Jimenez in the amount of $200,000, and sought to recover on the judgment under the insurance policy insuring Jimenez's vehicle. Chandler appeals from a judgment entered by the Circuit Court of Platte County, which found that she was entitled to only $50,000 in bodily injury liability coverage, and $2,000 in medical payments coverage, under the policy. We affirm.

### Factual Background

On January 2, 2011, Alexander Huber was killed while riding in the passenger seat of a 2002 BMW driven by Steven Jimenez. The BMW was owned jointly by Jimenez and his mother, Edna Wijnterp. The vehicle was insured by Allied Property & Casualty Insurance Co.

under an insurance policy that was issued to Edna Wijnterp and her husband Peter Wijnterp ("the Policy"). The Policy also insured two other vehicles owned by the Wijnterps, a 1999 Ford Taurus and a 2001 Volvo S60.

On February 10, 2011, Shelly Chandler, Alexander Huber's mother, filed this lawsuit against Jimenez for her son's death. Ted Huber, Alexander Huber's father, later intervened in the case as a plaintiff; Allied was granted leave to intervene as a defendant.

Chandler, Jimenez, and Allied entered an agreement in which Allied would pay $50,000 to Chandler under the Policy's bodily injury liability coverage, and $2,000 under the Policy's medical payments coverage. The parties also agreed that judgment would be entered against Jimenez in the amount of $200,000; Chandler agreed that she would only seek to satisfy the judgment from the proceeds of the Policy. Allied paid the agreed sums to Chandler in December 2011.

The parties disagreed whether the Policy afforded any additional coverage for Alexander Huber's death. Allied argued that the amounts it had already paid represented the applicable per-person bodily injury and medical payments limits of liability: $50,000 and $2,000, respectively. For her part, Chandler argued that the policy limits were three times as high as Allied contended: $150,000 for bodily injury and $6,000 for medical payments.

The parties stipulated to the relevant facts, and filed cross-motions for summary judgment. The trial court entered judgment in favor of Allied, finding that the Policy's per-person limit of liability for bodily injury was $50,000, and that the medical payments coverage was limited to $2,000. Chandler appeals.

**Standard of Review**

We review the entry of summary judgment *de novo*. We review the record in the light most favorable to the party against whom judgment was entered. We will affirm where the pleadings, depositions, affidavits, answers to interrogatories,

2

exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

*Corrigan v. Progressive Ins. Co.*, 411 S.W.3d 306, 310 (Mo. App. E.D. 2013) (citations omitted). Likewise, "[t]he interpretation of an insurance policy is an issue of law, subject to *de novo* review." *Allen v. Continental W. Ins. Co.*, No. SC93502, 2014 WL 2191034, at *4 (Mo. banc May 27, 2014) (citing *Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012)).

## Analysis

Chandler argues that the trial court's grant of summary judgment was erroneous because the Policy provides $150,000 of bodily injury coverage per person, not $50,000, and medical payments coverage of $6,000, not $2,000. We disagree.

> In construing an insurance policy, we apply the meaning that would be attached by an ordinary person of average understanding and resolve all ambiguities in favor of the insured. Ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy. Language is ambiguous if it is reasonably open to different constructions. Policy provisions are not to be interpreted in isolation, but rather we must evaluate the policy as a whole. A contract is ambiguous if it promises something in one clause and takes it away in another. However, where an insurance policy is unambiguous, absent a public policy to the contrary, we will enforce the policy as written. The mere fact that the parties disagree as to the meaning of a term or clause in an insurance policy does not give rise to an ambiguity. Likewise, we may not unreasonably distort the language of the policy or exercise inventive powers for the purpose of creating an ambiguity when none exists.

*Corrigan*, 411 S.W.3d at 311 (citations and internal quotation marks omitted).

The Policy insures three separate vehicles. Those vehicles are identified in a table in the Policy's Declarations, which assigns a number to each vehicle:

3

## DESCRIPTION OF VEHICLE

| VEH | Year | Trade Name | Body Type and Model | Identification Number |
|-----|------|------------|---------------------|----------------------|
| 1 | 2001 | VOLV | 4 DOOR | YV1RS61R112013616 |
| 4 | 2002 | BMW | 2 DOOR | WBABN33402JW53786 |
| 5 | 1998 | FORD | 4 DOOR | 1FAFP52S8WA196957 |

The Declarations state the Policy's limits of liability in a separate table, using vehicle numbers which correspond to those assigned to the three insured vehicles in the "Description of Vehicle" table:

### COVERAGE AND LIMITS OF LIABILITY (In Dollars)
Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY | | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | | UNINSURED MOTORISTS (PER POLICY) BODILY INJURY | | | UNDERINS. MOTRST (PER POLICY) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | EACH PERSON | OPTION | | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH ACCIDENT |
| 1 | 50,000 | 100,000 | 50,000 | 2,000 | | | 50,000 | 100,000 | | 50,000 | 100,000 |
| 4 | 50,000 | 100,000 | 50,000 | 2,000 | | | | | | | |
| 5 | 50,000 | 100,000 | 50,000 | 2,000 | | | | | | | |

The Policy states the following under the heading "LIMIT OF LIABILITY."

The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" result from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4

4.      Vehicles involved in the auto accident.  A vehicle and attached "trailer" are considered one vehicle.  Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer".

Chandler argues that an ordinary person would read the above Declarations and conclude that the Policy's per-person limit of liability for bodily injury is $150,000, a figure she derives by adding together the three numbers listed in the left column of the "Coverage and Limits of Liability" table.  She contends that the three $50,000 limits must be aggregated because there is no language in the Declarations stating that specific liability limits apply only to a particular vehicle.

Contrary to Chandler's argument, the Policy plainly and unambiguously specifies that a $50,000 bodily injury limit applies, separately, to each of the three vehicles insured under the Policy.[1]  Each figure of $50,000 appears directly adjacent to a vehicle number; those vehicle numbers correspond to the three separate vehicles identified in the Declarations.  The evident meaning of the table is that the limits of liability are separately stated, on separate lines, for the three vehicles insured under the Policy; we cannot read this table as creating a single, aggregate limit of liability equally applicable to all three vehicles.

The Eastern District recognized the meaning of this same Declarations page in *Becker v. Allied Property & Casualty Insurance Co.*, 422 S.W.3d 434 (Mo. App. E.D. 2013).  Although the issue presented in *Becker* concerned underinsured motorists coverage, the Court observed that a table like the one in this case "plainly" specified separate bodily injury liability limits for each of five insured vehicles:

---

[1]      We note at the outset that this case involves a single policy insuring multiple vehicles.  A materially different coverage question would be presented if the vehicles were insured under separate policies.  *Cf. Allstate Prop. & Cas. Ins. Co. v. Davis ex rel. Davis*, 403 S.W.3d 714, 718 n.4 (Mo. App. W.D. 2013).

5

The Declarations Page sets forth the coverage and limits of liability of Allied with regard to each of the Beckers' vehicles in the form of a grid. ***Each row in the grid plainly corresponds to one of the Beckers' vehicles***, and each column of the grid corresponds to the type of coverage provided under the policy. In the column for UIM coverage, the words "per policy" appear in parentheses. Additionally, beneath the "per person, per accident" designation, the amount of $100,000 (each person) and $300,000 (each accident) appear only once. Allied's designation of the coverage limit for the Beckers' UIM coverage is plainly different from the designation of the policy coverage limits for Bodily Injury, Property Damage, and Medical Payments. Unlike the entry for the UIM coverage, in the designated column for each of these different types of coverage, beneath the "per person, per accident" designation, the dollar value of the coverage limit is separately listed five times. ***Each of the five separate listings corresponded to each separate vehicle insured under the policy.*** In addition, the various columns indicating coverage for Bodily Injury, Property Damage, and Medical Payments do not contain the limiting designation of "per policy" as noted in the column for UIM coverage.

*Id.* at 437-38 (emphasis added).[2]

We also note that the Policy's "Limit of Liability" section repeatedly refers to the "limit" of liability applicable to a particular coverage, in the singular rather than plural. It states that the "*limit* of liability" in the Declarations page is the "maximum *limit* of liability for all damages." The use of the singular to refer to the applicable limit of liability is consistent throughout the Policy as a whole, including in the insuring clause. Viewed in conjunction with the Declarations, it is clear that the Policy contemplates a *single* limit of liability applicable to each insured vehicle.

Other coverage provisions contained in the Declarations confirm that the "Coverage and Limits of Liability" table lists the coverage associated with particular vehicles separately. For example, the Policy provides separate coverage for "Damage to Your Vehicle." The Declarations specify deductible amounts for "Damage to Your Vehicle" coverage in the rows

---

[2]   Although it is not entirely clear from the opinion, it appears that the Missouri Supreme Court interpreted a similar declarations page in the same way in *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140 (Mo. banc 2009) (stating that "the declarations page for the policy and the limit of liability provision state that coverage is provided up to $100,000 per person, $300,000 per accident, for each of the three vehicles the Ritchies owned").

corresponding to only two of the three vehicles insured under the Policy: the 2001 Volvo (vehicle #1) and the 2002 BMW (vehicle #4); but _not_ the 1998 Ford (vehicle #5). At oral argument, Chandler's counsel acknowledged that, by not listing a deductible amount for "Damage to Your Vehicle" coverage in the row corresponding to the 1998 Ford, the Declarations make clear that no such coverage is provided on the 1998 Ford.

The Declarations also contain a table explaining how the total policy premium was calculated. The "Premiums" table makes clear that separate premiums were calculated for each vehicle, for each coverage offered (bodily injury, property damage, medical payments, or "Damage to Your Vehicle"). This premium calculation once again confirms that the Policy provided separate coverage for each of the three listed vehicles, not aggregate coverage up to a combined liability limit.

Finally, the Policy's "Limit of Liability" provision states that "[t]he limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages . . . arising out of 'bodily injury' sustained by any one person in any one auto accident," and that "[t]his is the most we will pay regardless of the number of . . . [v]ehicles . . . shown in the Declarations." Although Chandler argues that this provision works in her favor, we disagree. For present purposes, the statement that the specified limit of liability applies "regardless of the number of vehicles shown in the Declarations" means that no matter how many different vehicles are identified in the Declarations, the limit of liability for any particular vehicle is not increased simply because that limit of liability is repeated with respect to other vehicles.[3]

---

[3] We note that the Declarations list a single dollar figure under the headings for uninsured and underinsured motorists coverage. Chandler argues that this creates an ambiguity with respect to how the _three_ numbers listed in the bodily injury column should be interpreted. The columns for uninsured and underinsured motorists coverage both explicitly state, however, that those columns specify the

7

Of the three vehicles insured under the Policy, only the BMW was involved in the accident at issue. The plain language of the policy indicates that the maximum per-person coverage afforded by the Policy for bodily injury associated with the BMW is $50,000.

Chandler argues that, even if the Policy is interpreted to afford separate $50,000 limits of liability for bodily injury coverage on each of the insured vehicles, rather than a single $150,000 liability limit, she should be permitted to "stack" the three separate $50,000 liability limits, and recover a total of $150,000.

> "Stacking" refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.

*Ritchie*, 307 S.W.3d at 135 (citation and internal quotation marks omitted).

The "Limit of Liability" provision of the Policy prohibits stacking, since it specifies that "[t]he limit of liability shown in the Declarations" is Allied's "maximum limit of liability" "regardless of the number of . . . vehicles . . . shown in the Declarations." Chandler argues that the Policy's "Other Insurance" clause, when read in conjunction with the "Limit of Liability" provision, creates an ambiguity which must be resolved in her favor. The "Other Insurance" provision states in relevant part that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." Chandler argues that the BMW was "a vehicle you do not own," because it was not owned jointly by Edna and Peter Wijnterp, the named insureds under the Policy. Therefore, according to Chandler, the coverage provided to the three separate insured vehicles under the Policy can be stacked.

---

applicable limit of liability "**PER POLICY**." *See Becker*, 422 S.W.3d at 437-38. This lends further credence to Allied's argument that the three numbers listed in the bodily injury column state the limit of liability *per vehicle*, not for the policy as a whole.

8

Although the parties hotly contest the issue, we need not decide whether the BMW should be deemed "a vehicle you do not own." Even if the BMW is considered a non-owned vehicle, "other collectible insurance" must exist before the "Other Insurance" provision is triggered. This is consistent with the general principle that, "[b]efore stacking can be an issue, there must first be applicable coverages to stack." *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 341 (Mo. App. W.D. 2013); *accord Becker*, 422 S.W.3d at 437 ("an insured seeking to stack coverages must actually be an insured as to the particular loss under more than one coverage"). Chandler's counsel acknowledged at oral argument, however, that she has not sought to recover under the coverage the Policy provides on the other two insured vehicles.[4] Because Chandler has not identified any *other* coverage which is even arguably applicable here, no "stacking" issue arises, and the "Other Insurance" provision is inapplicable.[5]

**Conclusion**

With respect to the BMW involved in the accident in which Alexander Huber was killed, the Allied Policy provides per-person limits of liability of $50,000 for bodily injury coverage, and of $2,000 for medical payments coverage. The circuit court correctly granted summary judgment to Allied with respect to the Policy's limits of liability. The judgment is affirmed.

---

[4] Because Chandler does not argue that the Policy's coverage on the Volvo or Ford vehicles is applicable here, we need not decide any issue concerning that coverage. We note, however, that because Jimenez would apparently qualify as a "family member" of the named insureds who owned an automobile, he might very well be considered an insured under the Policy "only for the use of 'your covered auto.'" Allied's counsel suggested at oral argument that this limitation would prevent Chandler from invoking the Policy's coverage for the Volvo or Ford vehicles, since they were not the "covered autos" which Jimenez was using at the time of the accident.

[5] Although we have not separately discussed the medical payments coverage in the text of this opinion, that coverage is subject to policy provisions which are in all relevant respects identical to those applicable to the bodily injury coverage. Therefore, the reasoning discussed in the body of this opinion applies equally to the medical payments coverage, and establishes that the trial court correctly determined that the Policy's medical payments coverage on the BMW is $2,000 per person, *not* $6,000.

9

_____
Alok Ahuja, Judge

All concur.