

# Missouri Court of Appeals

## Southern District

### Division One

DENNIS HENTE,                               )
                                            )
      Plaintiff/Appellant,        )
                                            )
    vs.                                )   No. SD33408
                                            )   Filed:  May 4, 2015
21ST CENTURY CENTENNIAL                     )
INSURANCE COMPANY,                          )
                                            )
      Defendant/Respondent.       )

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

#### Honorable Robert N. Mayer, Circuit Judge

**<u>AFFIRMED</u>**

Dennis Hente ("Hente") appeals summary judgment entered in favor of 21st Century Centennial Insurance Company ("21st Century") relating to whether Hente was entitled to stack underinsured motorist ("UIM") coverage, and whether he was entitled to uninsured motorist ("UM") coverage, under the terms of his automobile policy with 21st Century.  Finding no merit to Hente's four points on appeal, we affirm the trial court's judgment.

**Factual and Procedural History**

On the evening of July 19, 2010, Hente was operating his vehicle in the left northbound passing lane of Missouri State Highway 25 in Stoddard County. At the same time, Jennifer Kinney ("Kinney") was operating a vehicle in the right northbound lane of Missouri State Highway 25. Kinney, seeing a dead deer in her lane of traffic, swerved to her left forcing Hente's vehicle off the road where it struck a ditch, became airborne, rolled over, and came to rest on its top. Hente sustained serious injuries as a result of the accident.

Hente brought a claim against Kinney, an insured of Alpha Property and Casualty Insurance Company ("Alpha"). On May 16, 2011, Hente and Alpha entered into a settlement agreement for Kinney's liability policy limits of $25,000.

Hente had a policy of insurance ("the Policy") with 21st Century, containing UIM coverage and UM coverage with policy limits of $25,000 each, insuring the vehicle Hente was operating in the accident, as well as an additional vehicle owned by Hente.

On January 13, 2012, Hente filed a two-count petition against 21st Century. In Count I, Hente sought collection of policy limits under the UIM coverage for both insured vehicles, stacking the policies for $50,000; in Count II, Hente claimed he was entitled to the policy limits of UM coverage for both vehicles, stacking the policies for $50,000, due to the fault of an alleged phantom uninsured driver who initially struck and killed the deer.

On May 24, 2013, 21st Century filed a motion for partial summary judgment on the issues of stacking coverage on Hente's UIM claim, and the UM claim.

On November 4, 2013, the trial court entered an order sustaining 21st Century's motion for partial summary judgment as to Count II, the UM coverage claim. On June 20, 2014, the trial court entered an order sustaining summary judgment on Count I "as to the stacking issue . . . as

2

to one $25,000.00 insurance policy." On June 27, 2014, these two orders were consolidated by the trial court in a "Partial Summary Judgment Made Final for Appellate Purposes."[1] This appeal followed.

In his brief, Hente contends in Points 1 and 2 the trial court erred in entering partial summary judgment on Count I because the Policy was ambiguous on the UIM coverage and should have been interpreted to allow for stacking. In Points 3 and 4, Hente argues the trial court erred in granting summary judgment on Count II, on the UM coverage issue, because genuine issues of material fact exist as to whether the phantom uninsured motorist breached a duty owed to Hente.

The issues for our determination are whether the trial court erred in granting summary judgment because:

1.    The Policy was ambiguous and should have been interpreted to allow for stacking the UIM coverage; and

2.    Because there was a duty owed by the phantom uninsured motorist to Hente and issues of material fact related to that duty.

## Standard of Review

Our review of a trial court's grant of summary judgment is essentially *de novo*, and we view the record in the light most favorable to the party against whom judgment was entered. ***ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993).

When the moving party is the defending party, as in this case, summary judgment is established where the defending party shows:

---

[1] The trial court also ordered the case to remain open "as to $25,000.00 on the underinsured policy of the vehicle driven by [Hente] as complained in Count I." A bench trial was held on July 21, 2014, on that issue and the trial court entered judgment for Hente in the amount of $25,000. Hente has not appealed that judgment. It was at the conclusion of the bench trial that a final judgment was entered thus making the case ripe for appeal.

3

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (emphasis in original).

Once the movant has made "a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law," the burden shifts to the non-movant to show that one or more of the material facts shown by movant not to be in dispute, is actually genuinely disputed. *Id.* "The non-movant may not rest upon the allegations and denials of the pleadings, but rather must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 113 (Mo.App. E.D. 2008). "A genuine dispute is one that is real, not merely argumentative, frivolous, or imaginary." *Id.*

"The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Finance Corp.*, 854 S.W.2d at 380. Summary judgment must still be denied if all of the uncontroverted "factual assertions are not sufficient to entitle the movant to judgment as a matter of law." *Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo.App. W.D. 2013). "Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant[]" by which the non-movant could state, as applicable, a claim or defense. *Grissom v. First Nat'l. Ins. Agency*, 364 S.W.3d 728, 735 (Mo.App. S.D. 2012) (internal quotation and citation omitted).

**Analysis**

*Points 1 and 2: UIM Stacking as to Count I*

Hente argues in Points 1 and 2 that the trial court erred in granting summary judgment in favor of 21st Century because the UIM and UM coverages were improperly combined and ambiguous and, therefore, the trial court should have stacked the UIM coverages. We combine these points for ease of analysis.

The summary judgment record shows that the material facts necessary for the resolution of this issue are not in dispute. Nevertheless, summary judgment depends not on the absence of a fact question, but the undisputed right to judgment as a matter of law. *ITT Commercial Finance Corp.*, 854 S.W.2d at 380. Likewise, the question before us is whether, based on the facts in the summary judgment record, 21st Century was entitled to judgment as a matter of law. *See **Dutton v. American Family Mutual Insurance Company***, No. SC94075, 2015 WL 468715, at *2 (Mo. banc Feb. 3, 2015) ("The interpretation of an insurance policy is a question of law that this Court also determines *de novo*.").

The Policy at issue in this matter prohibited UIM stacking. Hente argues that, as a matter of law, this anti-stacking provision is unenforceable because the UM and UIM coverages are lumped together in Part C of the policy.

In Missouri, stacking insurance benefits allows an insured

> to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided within a single policy, as when an insured has one policy which covers more than one vehicle.

*Corrigan v. Progressive Ins. Co.*, 411 S.W.3d 306, 310 (Mo.App. E.D. 2013) (internal quotation and citations omitted). Missouri law requires all automobile insurance policies to include UM

5

coverage. § 379.203.[2] As a result, our Supreme Court has held that where an insured has two or more vehicles under separate policies or multiple coverages within a single policy, insurers must allow stacking of UM coverage. *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009).

By contrast, there is no requirement that insurance policies carry UIM coverage, and there is no similar policy requiring the stacking of UIM coverage. *Corrigan*, 411 S.W.3d at 311. Courts will enforce policies which unambiguously prohibit stacking. *Id.* Where policies are ambiguous as to stacking, policies will be construed in favor of the insured and allow stacking. *Id.*

Such ambiguity has been found where the provisions for UM and UIM coverage are "lumped together" in a policy. *Id.* at 313. The UM and UIM coverages are not lumped together where the respective provisions are "separate and distinct," where each coverage section includes its own insuring agreement, definitions, exclusions, limits of liability, and other separate provisions. *Id.*

Hente declares in his brief, without any explanation, analysis, or sufficient legal authority, that the UIM and UM coverages are "lumped together under Part C of the policy," and therefore ambiguous. This bare legal conclusion is insufficient to support Hente's argument and inconsistent with cases like *Corrigan* and *Becker v. Allied Property & Cas. Ins. Co.*, 422 S.W.3d 434, 437-38 (Mo.App. E.D. 2013). Nevertheless, we observe that the Policy at issue in this case is very similar to other policies held not to be ambiguous. *See*, *e.g.*, *Becker*, 422 S.W.3d at 437-38; *Corrigan*, 411 S.W.3d at 310-15.

---

[2] All references to statutes are to RSMo 2000, unless otherwise indicated.

6

Hente relies on *Maxon v. Farmers Insurance Company, Inc.*, 791 S.W.2d 437 (Mo.App. W.D. 1990). *Maxon* is distinguishable. There, the policy language defined an underinsured tortfeasor the same as an uninsured tortfeasor in the same section, but later language prohibited stacking when the insured had two or more cars insured with the company. *Id.* at 438-40. Because the contract "promise[d] something in one point and t[ook] it away in another, there [was] a resultant ambiguity[.]" *Id.* at 438. There are no contradictory representations here which are similar to *Maxon*.

Further, unlike *Krombach v. Mayflower Insurance Company, Ltd.*, 827 S.W.2d 208, 210-11 (Mo. banc 1992), cited by Hente, the Policy here treats uninsured and underinsured coverage separately in the declarations page, the limits of liability, the definitions section, and other insurance coverage.

Hente further argues that there is an ambiguity in the Policy because the declaration page states that the limit for UIM coverage is "$25,000/ $50,000 per person/per accident." Specifically, Hente suggests that the space between $25,000/ and $50,000 makes the policy ambiguous because a reasonable person could conclude that the $50,000 was the policy limit per person. Hente cites no authority for this proposition, we find none, and we find the assertion unpersuasive.

The challenged declarations portion of the policy reads as follows:

| COVERAGE | LIMITS OF LIABILITY | AUTO 1 | AUTO 2 |
|---|---|---|---|
| Bodily Injury…….. | $25,000/ $50,000 Per Person/Accident | $ 147.07 | $ 70.29 |
| Property Damage.. | $10,000 Per Accident | $ 49.12 | $ 40.00 |
| Uninsured Motorist | | | |
| Bodily Injury | $25,000/ $50,000 Per Person/Accident | $ 14.21 | $ 16.22 |
| Underinsured Motorist | | | |
| Bodily Injury…... | $25,000/ $50,000 Per Person/Accident | $ INCL | $ INCL |
| Comprehensive…. | Deductible AUTO#1 $250 #2 $250 | $ 88.77 | $ 59.79 |
| Collision………… | Deductible AUTO#1 $250 #2 $250 | $ 147.57 | $ 155.81 |
| | Total Premium Per Auto | $ 444.74 | $ 342.11 |

***THIS IS NOT A BILL*** TOTAL FULL TERM PREMIUM $ 786.85

7

In construing the terms of a policy, the "Court applies the meaning an ordinary person of average understanding would attach if purchasing insurance and resolves ambiguities in favor of the insured." **Dutton**, 2015 WL 468715, at *2. This requires examining policies "as a whole." **Id.** at *4. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions. Absent an ambiguity, an insurance policy must be enforced according to its terms." **Seeck v. Geico Gen. Ins. Co.**, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation and citation omitted).

The challenged text "$25,000/ $50,000 Per Person/Accident" is compartmentalized within the space designated "Limits of Liability." The space between $25,000 and $50,000 is not so great that a reasonable person reading it would not, upon seeing "$50,000 Per Person/Accident," also see the corresponding antecedent text of "$25,000/." There is no demonstrated uncertainty as to the meaning of the challenged text.

The trial court did not err in granting partial summary judgment on Count I for failing to interpret the Policy as ambiguous to allow for stacking of the UIM coverage. Points 1 and 2 are denied.

### Points 3 and 4: UM Summary Judgment as to Count II

In Points 3 and 4, Hente argues the trial court erred in granting summary judgment as to Count II because a genuine issue of material fact exists as to whether the phantom uninsured driver tortiously breached a duty owed to Hente.

To recover for negligent tortious conduct of the phantom uninsured driver, Hente must show: (1) the existence of a duty on the part of the phantom uninsured driver to protect Hente from injury; (2) the phantom uninsured driver's failure to perform that duty; and (3) injury to

8

Hente resulting from that failure. *See Blackwell v. CSF Properties 2 LLC*, 443 S.W.3d 711, 716 (Mo.App. E.D. 2014).

We observe that "[t]he purpose of section 379.203 is to establish a minimum level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009). Likewise, a claim for UM coverage requires a showing of tortious conduct by an uninsured motorist. *See Hill v. Government Employee Ins. Co.*, 390 S.W.3d 187, 191-92 (Mo.App. W.D. 2012).

Hente concedes that for him to prevail on Points 3 and 4, we would be required to recognize, under Missouri law, the duty of a motorist who has struck a deer on a highway to remove or warn others of the dead or injured animal in the roadway. Hente cites no persuasive Missouri authority for such a duty, and we decline to declare such a duty.

Arguing that UM coverage is imputed under the Policy, Hente points to statutes and distinguishable case law as sources of a duty which was breached by the phantom uninsured driver.

Hente cites *Lee v. Smith*, 484 S.W.2d 38, 44 (Mo.App. Spfld.D. 1972), for the proposition that "Common Law imposes a duty not to obstruct roadways." *Lee* does not support this proposition. Rather, in *Lee*, plaintiffs brought an action to have an allegedly existing roadway declared a public road under the provisions of section 288.190, RSMo (1969) due to public use of the road for over ten years. *Id.* at 42-43. The court there stated:

> And, granted that encroachment upon or obstruction of a public highway is an unlawful act, still evidence that access to a public road has been entirely blocked and cut off for ten years and that the encroachment has been submitted to by the public may be taken as evidence that the road has been abandoned.

9

*Id.* at 43-44. First, the portion of the sentence indicating that it is unlawful to obstruct a public highway is *dicta*, and therefore not binding on this Court. Second, Hente does not direct us to any authority interpreting *Lee* to impose such a duty on a motorist, nor do we read *Lee* to stand for this proposition.

Hente also relies on section 577.076.2 ("Littering with carcasses—penalty"; prohibiting, in relevant part, the placing of a dead animal on a roadway); section 304.160 (defining as a misdemeanor the purposeful or accidental placement of substances injurious to the feet of persons, animals, or the tires of vehicles); section 304.151 (defining as an infraction the failure of a driver to make a reasonable effort to keep his vehicle from obstructing the flow of traffic); section 577.060 (defining the crime of leaving the scene of a motor vehicle accident); and Minn. Stat. § 169.42.1 (2003) (prohibiting the depositing of the carcass of a dead animal upon a street or highway likely to injure a person, animal, or vehicle upon the roadway).

While Hente never alleges "statutory negligence" or "negligence per se" specifically in his brief, his argument is of this nature. "'Negligence *per se* arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person.'" *Goudeaux v. Board of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 512 (Mo.App. W.D. 2013) (quoting *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 84-85 (Mo.App. E.D. 2012)).

> To establish a claim of negligence per se, the plaintiff must *plead* the following four elements: (1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury.

*Dibrill*, 383 S.W.3d at 84-85 (emphasis added).

We observe that none of these required elements are pled in Hente's petition. Facts which might support such a claim appear for the first time in his response to 21st Century's motion for summary judgment. Even there, on the record before us, required elements are missing. Specifically, *Hente* points to sections 577.076.2, 304.160, 304.151, and 577.060 for the proposition that "it is an incorrect statement of law" that "[t]here is no State Statute that requires a person to stop and drag a deer off the side of the[]road after they hit a deer . . . ." Hente does not specifically assert in his response to 21st Century's statement of uncontroverted material facts that the phantom uninsured motorist violated any of these statutes, that Hente was a member of the class of persons intended to be protected by one of these statutes, that Hente's injuries were the kind one of the statutes was intended to prevent, or that the violation of such statute was the proximate cause of Hente's injuries. Because of this deficiency, Hente's arguments on appeal fail to persuade us that the trial court erred in granting summary judgment in favor of 21st Century on Count II. The trial court did not err in granting summary judgment on Count II of Hente's petition because there was no duty on the part of the alleged phantom uninsured motorist to remove or warn of the deer in the road. Points 3 and 4 are denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concur

DANIEL E. SCOTT, J. - Concur